## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LATEESHA HARRIS,<br><br>SHAQUANA HARMON,<br><br>LARON MCKOY, and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF NEW YORK,<br><br>    Defendants. | Civil Action No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs, by and through their counsel, the law firm of McGillivary Steele Elkin LLP, for their complaint against the City of New York ("New York City"), state as follows:

### INTRODUCTION

1.      Plaintiffs are employees of the Defendant, City of New York, who work or have worked in the position of Correction Officer for the Department of Corrections ("DOC") at Rikers Island. Plaintiffs bring this action for back pay and other relief pursuant to 29 U.S.C. § 207 and 29 U.S.C. § 216(b) to remedy the Defendant's willful and unlawful violations of federal law complained of herein, since March 12, 2022, through the present and ongoing.

2.      Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation under the FLSA. The Plaintiffs are

similarly situated to each other and to all Correction Officers who work or worked at Rikers Island because they have been subject to the same policies and/or practices that violate the FLSA.

3.     Defendant has suffered or permitted Plaintiffs to perform uncompensated overtime work before their paid shifts and during unpaid meal periods.

4.     In those instances when Defendant does pay for overtime work, such as when overtime is prescheduled or when Correction Officers work a double shift, it unreasonably delays such overtime payments beyond what is reasonably necessary for Defendant to compute and arrange for the payment.

5.     Defendant has failed to properly include various payments to Plaintiffs and all those similarly situated, such as night shift differential pay, longevity pay, specialty, and various other payments, in the regular rate of pay on which Plaintiffs' overtime rate is based.

## PARTIES

6.     Plaintiffs have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Their written consent forms, which contain each Plaintiff's name and address, are set forth in Exhibit A.

7.     Each of the Plaintiffs in this action while employed by Defendant has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

8.     Defendant New York City operates the DOC and is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, NY, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, NY 10007.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

11.      Plaintiffs are, and have been at all times material, employed by Defendant in the DOC in the position of Correction Officer at various locations and assignments at Rikers Island. Rikers Island is the site of one of the world's largest correctional institutions, where DOC is responsible for detaining a daily population of approximately 7,000 individuals, including pretrial detainees, detainees sentenced to short jail terms, and detainees who are placed at a Rikers Island facility temporarily pending transfer elsewhere. The DOC detains these individuals at Rikers in one of the 10 facilities clustered around the small island.

12.      In the Correction Officer position at Rikers Island, Plaintiffs' principal job duty, like the principal job duty of all others similarly situated is to maintain the safety and security of the institutions.  This principal job duty includes but is not limited to: supervising detainee meals, visits, recreational programs, and/or other activities; observing and inspecting surroundings for conditions which threaten safety and security, including conducting searches in order to detect contraband as appropriate; completing forms, reports, and appropriate logs; communicating with other Correction Officers to exchange pertinent information; ensuring the safety of detainees, coworkers, as well as DOC supplies and equipment.

13.      For example, at all times material, Plaintiff Lateesha Harris has worked as a Correction Officer and, until reassignment in July 2024, was assigned to the mess hall at the West Facility on Rikers Island; Plaintiff Shaquana Harmon has worked for Defendant as a Correction

Officer and is currently assigned to the Restrictive Enhanced Supervisory Housing Unit ("RESH") at Rose M. Singer Center on Rikers Island; and Plaintiff Laron McKoy has worked for Defendant as a Correction Officer and is currently assigned to the Control Center at the Rose M. Singer Center on Rikers Island.

14.    While working as Correction Officers, Plaintiffs and all others similarly situated routinely work over 40 hours a week. However, the City fails to compensate Plaintiffs for all hours worked over 40 in a workweek at a rate of one and one-half times their regular rate of pay.

15.    The regular schedule for Plaintiffs and all others similarly situated consists of either a "5-2" or a "4-2" schedule.

16.    Plaintiffs assigned to a 5-2 schedule work five consecutive regular shifts exceeding 8 hours each, followed by two days off, before repeating the cycle again. As a result, Plaintiffs working a 5-2 schedule are regularly assigned to work 40 scheduled hours each week.

17.    Plaintiffs working a 4-2 schedule work four consecutive regular shifts exceeding 8 hours each, followed by two days off, before repeating the cycle again. As a result, in a seven-day workweek, Plaintiffs working a 4-2 schedule are assigned to five regular shifts, each exceeding 8 hours, for four weeks in a six-week period. During these four weeks, Plaintiffs are regularly assigned to work 40 scheduled hours or more. In the remaining two weeks of that six-week period, Plaintiffs working a 4-2 schedule are assigned to work four regular shifts. During those two weeks, Plaintiffs are regularly assigned to work 32 scheduled hours.

18.    Defendant has suffered or permitted Plaintiffs and all others similarly situated to work approximately 10-15 minutes in excess of their scheduled shift hours prior to the start of their shift, performing the tasks described below in Paragraphs 12 and 39-41. Defendant does not compensate Plaintiffs for this additional work time outside their regularly scheduled shifts. Instead,

Defendant only compensates Plaintiffs and all others similarly situated for time in excess of the scheduled shift that it deems to be prescheduled overtime. As such, Defendant regularly fails to compensate Plaintiffs and all others similarly situated at a rate of one and one-half times their regular rate of pay for approximately 50 minutes to one hour and 15 minutes of work each week that they work all five of their scheduled shifts.

19.     Similarly, Defendant has suffered or permitted Plaintiffs and all others similarly situated to perform work during their unpaid meal periods. Defendant does not compensate Plaintiffs for this additional work, even though Defendant should and in fact does know that Plaintiffs frequently receive less than a 20-minute break of uninterrupted non-work time during their meal periods. This is because Plaintiffs' responsibilities during meal breaks include, but are not limited to, responding to emergencies, answering phones, responding to supervisor questions, responding to detainee questions or issues, and performing other pressing work tasks, without any additional pay.

20.     Additionally, under DOC-wide policy and the applicable collective bargaining agreement, Plaintiffs receive certain premium payments on top of their base pay, including, for example, differential payments related to night work, longevity pay, and specialty pay.

21.     When Defendant compensates Plaintiffs and all others similarly situated for prescheduled overtime (which does not include the time spent performing work described above in Paragraphs 39-41), Defendant systemically fails to pay them for this overtime work at the correct rate because it fails to properly include, among other things, their nightshift pay in the regular rate of pay on which their overtime rate is based.

### *Defendant's Fair Labor Standards Act Violations are Willful*

22.     Correction Officers' supervisors observe them arrive before their scheduled shift start times. During the unpaid time prior to the scheduled shift, supervisors observe Correction Officers undergo staff screening at the entrance of the facility to which they are assigned, sign in manually on a timesheet or by swiping a personal identification badge, perform work tasks including picking up equipment, such as body-worn cameras, and collect and don required protective gear.

23.     Correction Officers are expected to attend roll call commencing at the exact start time of each assigned shift, by which time the Correction Officers must be completely ready to perform work duties. Correction Officers who do not report for roll call at the precise start time of their shift must submit a "late slip" and are docked pay.

24.     While the City's timesheets could show actual arrival times, generally, they do not. This is because Correction Officers are instructed that only prescheduled or otherwise preapproved overtime work will be compensated and record their scheduled shift start times rather than their actual pre-shift arrival times.

25.     Defendant fails to pay the Correction Officers on a minute-by-minute basis for this pre-shift work time, despite being on notice, through the supervisors' observations, of the precise amount of unpaid overtime that Plaintiffs and all others similarly situated work each day. Instead, Defendant pays Plaintiffs and all others similarly situated based only on their scheduled shift hours and any prescheduled overtime hours.

26.     Defendant utilizes timekeeping software to administer and calculate the pay of Plaintiffs and all others similarly situated. However, unlike most City workers, Plaintiffs do not

punch in or out of the DOC timekeeping system. Instead, Defendant only pays Correction Officers for their scheduled shifts (unless they are late, in which case they are docked pay).

27.    Defendant is aware that its "pay-to-schedule" system fails to capture Plaintiffs' actual working hours and fails to pay employees for compensable work time. For example, in *Perry v. City of New York,* the Second Circuit affirmed a jury verdict in favor of New York City EMTs and Paramedics resulting in a final judgment of over $19 million for FLSA violations, including failing to pay for pre-shift and post-shift time recorded in the City's timekeeping system, and a finding of willfulness. 78 F.4th 502 (2d Cir. 2023). Similarly, in the consolidated cases of *Foster* and *De La Cruz v. City of New York*, the trial court granted summary judgment for plaintiffs working at two other City agencies—the Administration for Children's Services and the Human Resources Administration, on FLSA claims that the City had failed to compensate them for time worked before and after their scheduled shifts, and during their unpaid meal periods. *Foster,* 1:14-cv-04142, *De La Cruz,* 1:14-cv-09220, 2017 WL 11591568, at *4, *23-25 (S.D.N.Y. Sept. 30, 2017).

28.    Defendant has repeatedly been held liable for failing to pay for pre- and post-shift work; it is well aware of its obligation to pay employees for overtime work that is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not prescheduled or pre-approved by Plaintiffs' superiors. *See, e.g.*, *Lawtone-Bowles v. City of New York*, 1:16-cv-04240, 2020 WL 2833366, at *4 (S.D.N.Y. June 1, 2020) ("Defendant[] . . . argu[es] . . . that Plaintiffs failed to report the unpaid overtime . . . . The City has made this argument repeatedly in FLSA overtime litigation in this District and it has been unanimously rejected."); *Foster/De La Cruz*, 2017 WL 11591568, at *4, *23-25 (in consolidated cases, granting summary judgment for two sets of plaintiffs—employees of the City's

Administration for Children's Services and Human Resources Administration, respectively—on FLSA claims that they worked uncompensated overtime of which their managers were aware, despite failure to seek pre-approval or otherwise request compensation); *Perez v. City of New York*, 1:12-cv-04914, 2017 WL 4326105, at *12-13 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that plaintiffs failed to "report" overtime on the City's timekeeping system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours); *Worley v. City of New York*, 1:17-cv-04337, 2020 WL 730326 (S.D.N.Y. Feb. 12, 2020) (granting summary judgment to plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware).

29.    The former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70 ("[I]t would be . . . the supervisor's responsibility to ensure that the employees get paid for work about which the employer is aware; correct?" "Correct."). *See also Foster/De La Cruz*, 2017 WL 11591568, at *9 ("[T]he City's chief employment lawyer . . . concedes that where a manager observes an employee working [outside their shift], the manager has an obligation to make sure that employee is compensated for that time, even if the employee did not obtain pre-approval[.]") (citations omitted).

30.    Despite these and other decisions finding the City liable for failing to pay for overtime work, including at Rikers Island, the City has failed to take any steps with respect to its timekeeping system or its own processes and procedures to properly capture and compensate its workers for compensable time that could be logged and paid as work time.

31.     Defendant has failed to conduct an audit or otherwise investigate any time worked prior to the shift start times, during meal periods, or examine its timekeeping and overtime approval practices.

32.     At all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work that is performed with their supervisors' knowledge and that could have been easily recorded but was not, pursuant to Defendant's instructions and the rule that overtime will not be paid unless prescheduled or otherwise preapproved. Defendant could have also required the Correction Officers to punch into the DOC timekeeping system upon beginning work as most of Defendant's workers do. Had Defendant done so, there would be a record of the time the Correction Officers begin working.

33.     The City has also previously been held liable for failure to properly calculate employees' regular rates of pay by failing to properly include differential payments, such as night shift differentials, longevity pay, and specialty pay, in the rate at which overtime is paid to employees. *See, e.g.*, *Foster/De La Cruz*, 2017 WL 11591568, at *32-35; *Lawtone-Bowles v. City of N.Y.*, 2020 WL 2833366, at *5; *Lynch v. City of New York*, 291 F. Supp. 3d 537, 551-52 (S.D.N.Y. 2018). Despite these decisions, the City continues to fail to properly include such differential payments in Plaintiffs' regular rates of pay.

34.     Upon information and belief, Defendant has failed to seek advice from the U.S. Department of Labor regarding whether its pay policies and practices comply with the FLSA.

35.     Defendant has not disciplined any Correction Officer for performing unpaid overtime before their scheduled shift hours or during their unpaid meal breaks.

36.     Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs. Plaintiffs' timekeeping records and payroll data are

"maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and require[] a separate search for each pay period." *Murray v. City of New York*, No. 1:16-cv-08072, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

### *Uncompensated Work Performed by Plaintiffs*

37.     While working as Correction Officers for DOC, Plaintiffs and all others similarly situated regularly work over 40 hours a week. With the exception of the two of every six weeks in which "4-2" schedule employees work only four regularly scheduled shifts in a week, Correction Officers are regularly scheduled to work five shifts in excess of 8 hours each (totaling a minimum of 40 hours of scheduled work per week). Defendant has suffered or permitted them to work, in addition to paid overtime work and unpaid meal period work, approximately 10-15 minutes in excess of their scheduled shift hours on a daily basis without the required overtime pay.

38.     Plaintiffs and all others similarly situated perform their primary job duties, which include, but are not limited to, those duties enumerated in Paragraphs 12 and 39-41, prior to and/or after their scheduled shifts.

39.     For example, prior to their scheduled shifts, Correction Officers engage in necessary, integral, and indispensable tasks, such as: consistent with a principal activity of ensuring no contraband enters the facility, participating in the employer-mandated staff screening specifically designed by Defendant to ensure that contraband is not introduced into their assigned facility; collecting equipment that they are required to carry on their person during their shifts, such as body-worn cameras; and collecting and donning required protective clothing and equipment.  Correction Officers must necessarily perform this work prior to their paid time because of, for example, Defendant's policy requiring them to attend roll call at the start of their paid shift; failure to comply with this policy results in Defendant docking Plaintiffs' pay.

40.     On a daily basis, Correction Officers begin their unpaid pre-shift work when they start the process of clearing the staff screening site at the entrance of their assigned facility, and/or when they pick up necessary equipment, whichever is earlier.  When going through the process of clearing the screening site, Correction Officers perform their principal activity of ensuring the safety of the facility, staff, and DOC equipment by ensuring that no contraband enters the facility.

41.     For Correction Officers who collect equipment prior to screening, the compensable, (but unpaid) workday begins when they retrieve required equipment, such as body-worn cameras. They continue to perform unpaid work as they don their required uniforms and equipment in the locker room or on the way to post, including a stab-proof vest and duty belt, which they use to carry keys, oleoresin capsicum ("OC") spray, and other necessary equipment.

42.     As such, each week in which they are assigned five regular shifts, and as part of their regular schedules, Correction Officers perform approximately 50 minutes to 1 hour and 15 minutes of uncompensated work on top of their regularly scheduled 40 hours.

43.     Further, Defendant has suffered or permitted Correction Officers to work, without additional pay, when their meal periods are interrupted by work, which happens on a frequent, nearly daily basis. For example, although Defendant purports to allow Correction Officers to put in an overtime request for days in which they did not receive meal period relief, Correction Officers who are able to eat while working, despite receiving no break for any period longer than 20 minutes, are not paid for their additional work.

44.     Although Defendant should have been aware of and was in fact aware of this additional overtime work performed by Plaintiffs, Defendant failed to compensate them for it.

45. The amount of uncompensated work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other evidence, such as Defendant's other work and pay records.

### *Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

46. Plaintiffs and all others similarly situated routinely work additional shifts and prescheduled overtime for which they are paid.

47. While working as Correction Officers during the last three years, Plaintiffs and all others similarly situated have received certain payments in addition to their basic pay. These payments include, but are not limited to night shift differential, longevity pay, and specialty pay. These payments are made pursuant to DOC-wide policy, and/or the applicable collective bargaining agreement, and thus they are paid to Plaintiffs and all others similarly situated.

48. However, on occasions when Plaintiffs and those similarly situated are paid overtime compensation, Defendant wrongly fails to properly include these additional differential payments in the regular rate of pay used to calculate the overtime rate payable to Plaintiffs and those similarly situated. For example, during the week of December 15, 2024, through December 21, 2024, in addition to her regular recurring gross pay for her scheduled shifts, Plaintiff Harmon received premium pay including night shift differential, longevity pay, and specialty pay for working in the RESH unit. That week, Plaintiff Harmon also worked 16 hours of prescheduled overtime for which she was paid $1,234.00. Had that night shift differential payment been properly included when calculating her regular rate of pay in that workweek, as required by law, she would have been paid $1,287.94 for her 16 hours of prescheduled overtime. Instead, Defendant paid Plaintiff Harmon $1,234.00, an underpayment of $53.44.

49. The failure to properly include these differential payments in Plaintiffs' regular rates of pay means that when Plaintiffs receive paid overtime for working in excess of 40 hours in

a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

50.    The amount of undercompensated work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other evidence, such as Defendant's other work and pay records.

51.    Correction Officers employed by Defendant who receive differential payments pursuant to Agency-wide policy and/or collective bargaining agreements, including Plaintiffs, are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 hours because Defendant continues to fail to properly include these payments in the regular rate of pay upon which the Correction Officers' overtime rate is based. The precise amount of improperly paid overtime received by each Correction Officer can be identified through the Defendant's timekeeping system and through other work and pay records.

### *Late Payment for Overtime Worked*

52.    Plaintiffs and all others similarly situated routinely work prescheduled overtime for which they are at least partially compensated, such as when working an overtime shift, but in those instances, Defendant unreasonably delays approval of payment for that overtime work or otherwise delays payment to Correction Officers for their overtime work for reasons unrelated to Defendant's ability to determine the amount of overtime compensation that is owed.

53.    For example, in the final months of 2024, Plaintiffs were told that a timekeeper assigned to approve the overtime pay requests by Correction Officers was out of the office for a period of several consecutive weeks, resulting in significant delays to overtime payments that could have been calculated and paid weeks or months earlier. Overtime payments for Correction

Officers are routinely made an entire pay period, weeks, or even months later than the date on which Plaintiffs have been paid for their non-overtime work hours for that week.

54.    Since March 12, 2022, continuing to the present and ongoing, Defendant has violated basic prompt payment principles of the FLSA by delaying Plaintiffs' overtime payments for working in excess of 40 hours a workweek by weeks, and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends.

55.    The extent of damages owed resulting from late overtime payments for Plaintiffs and those similarly situated can be identified through the Defendant's timekeeping system and through other evidence, such as Defendant's other work and pay records.

### *All Correction Officers Are Similarly Situated*

56.    All Correction Officers employed by Defendant, including Plaintiffs, at Rikers Island are similarly situated and are regularly scheduled to work at least 40 hours in a workweek. These Correction Officers are denied compensation for approximately 50 minutes to 1 hour and 15 minutes per week for the pre-shift work they perform pursuant to Defendant's policy of only paying for prescheduled or pre-approved overtime, and its adoption of a "pay-to-schedule" policy which does not compensate for work time performed outside of the scheduled shift.

57.    The Correction Officers are also similarly situated to each other and to the Plaintiffs because they perform work during their unpaid meal breaks pursuant to Defendant's policy of automatically deducting pay for a meal break, while, at the same time, suffering or permitting Correction Officers to perform work during some or all of such unpaid meal breaks.

58.     Correction Officers perform, as part of their regular schedules, uncompensated, pre-shift work that is uniform and inherent in their positions as Correction Officers, including, but not limited to, the duties enumerated in Paragraphs 12 and 39-41.

59.     Additionally, the time pressures that make it necessary for Correction Officers to begin working approximately 10-15 minutes before their shifts are caused by uniform, Agency-wide policies or practices relating to, *inter alia*, the requirement that Correction Officers participate in staff screening to ensure contraband is not introduced to the facility, picking up necessary equipment like body-worn cameras, collecting and donning protective equipment, and the requirement that Correction Officers attend roll call at the precise start of each shift.

60.     Correction Officers also perform, as part of their regular schedules, uncompensated work during unpaid meal periods that is uniform and inherent in their positions as Correction Officers, including, but not limited to, the duties enumerated in Paragraphs 12 and 39-41.

61.     As a condition of DOC-wide policy and/or the applicable collective bargaining agreement, Correction Officers are all eligible to receive longevity pay, night shift differential, specialty pay, as well as other differential payments when they meet the conditions authorizing such pay.

62.     When Correction Officers receive such differential payments, Defendant universally fails to properly include their value in the regular rate of pay used to determine the Correction Officers' overtime rate.

63.     Defendant fails to properly include such differential payments in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice.

64.     Correction Officers are all subject to Defendant's same practice and policy of using the City's timekeeping and payroll system to administer and calculate their pay.

65.     Correction Officers are all subject to Defendant's policy or practice of failing to promptly pay overtime pay for prescheduled and/or preapproved overtime work.

## COUNT I

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS
ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION
OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

66.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 65 in their entirety and restate them herein.

67.     At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week they have performed work activities, including but not limited to performing tasks enumerated in Paragraphs 12 and 39-41, without compensation before their scheduled shifts and during their unpaid meal breaks. This additional, daily work has caused Plaintiffs and all others similarly situated to work in excess of 40 hours in a week without proper overtime compensation in violation of the FLSA. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

68.     Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours that employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements

of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their regularly scheduled shifts and during the unpaid meal break.

69.     As a result of Defendant's willful and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs are in the exclusive possession, custody and control of the Defendant and its public agencies and the Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the Plaintiffs from which the amount of Defendant's liability can be ascertained.

70.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

71.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## <u>COUNT II</u>

**FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

72.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 65 in their entirety and restate them herein.

73.     Section 207(e) of the FLSA, 29 U.S.C. § 207(e), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be

included in the rate at which FLSA overtime is paid, with some limited exceptions not applicable here. Defendant has failed to include certain differential payments, including night shift differential pay, longevity pay, specialty pay, and other forms of differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and all others similarly situated, resulting in Defendant paying Plaintiffs and all others similarly situated for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include these forms of additional compensation in Plaintiffs' regular rate of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

74.     As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and all others similarly situated from which the amount of Defendant's liability can be ascertained.

75.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

76.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR MONTHS AFTER THE OVERTIME WAS WORKED

77.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 65 in their entirety and restate them herein.

78.     The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. From March 12, 2022, as well as before, continuing through the present and ongoing, Defendant has violated these basic principles by delaying Plaintiffs' overtime payments for working in excess of 40 hours a week by weeks and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

79.     As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, No. 7:17-cv-07804-NSR (S.D.N.Y. Jan. 21, 2022), "while 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that it is a violation of the FLSA to withhold employees' overtime such that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck.'" (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.,* No. 12-CV-5565 (PKC), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 29, 2018)). Here, Defendant's failure to pay Plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

80.    As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for the Plaintiffs are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

81.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to promptly pay overtime compensation as alleged herein.

82.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b) Award Plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and all others similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

DATE: March 12, 2025                    Respectfully submitted,

_s/ Sarah M. Block_____
Gregory K. McGillivary (*Pro Hac Vice Forthcoming*)
Molly A. Elkin (*Pro Hac Vice Forthcoming*)
Sarah M. Block
John W. Stewart (*Pro Hac Vice Forthcoming)*
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@mselaborlaw.com
mae@mselaborlaw.com
smb@mselaborlaw.com
jws@mselaborlaw.com

*Counsel for Plaintiffs*